**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,  )
  )
  v.  )
  )  ID. Nos. 1711004038 & 1711003714
RICARDO MENDEZ,  )
  )
  Defendant.  )

Submitted: March 22, 2021
Decided: June 9, 2021

## ORDER ON DEFENDANT'S COMPETENCY TO STAND TRIAL

This 9th day of June, 2021, the Court has considered the arguments concerning Defendant Ricardo Mendez's competency to stand trial in the above-captioned cases. For the reasons set forth in this Order, the Court finds that Defendant is not competent to stand trial at this time.

## BACKGROUND AND PROCEDURAL HISTORY

Defendant Ricardo Mendez was arrested for Murder First Degree on November 7, 2017. The circumstances of his arrest led him to be charged with additional offenses. Defendant has been diagnosed with Schizoaffective Disorder and a Mild Intellectual Disability. The State and defense counsel both raised issues concerning Defendant's competency. On February 21, 2019, this Court ordered that Defendant be admitted to the Delaware Psychiatric Center ("DPC")

1

where he could undergo competency restoration treatment. Defendant remains housed at DPC.

The Court held a competency hearing on December 8, 2020. During that hearing, the State called Douglas S. Roberts, Psy.D., Jennifer Buhler, Psy.D., and Stephen Mechanick, M.D. to testify. The defense intended to call Maureen L. Reardon, Ph.D., but her testimony was postponed so that she could complete and submit an expert report. The competency hearing reconvened on February 3, 2021. During this second hearing, the defense called Dr. Reardon to testify, and the State recalled Dr. Mechanick. After the testimony was completed, the State and the defense provided written submissions, which were filed on March 22, 2021.

## LEGAL STANDARD

It is a fundamental requirement of due process that a criminal defendant be competent to stand trial.[1] Where a defendant's competency is challenged, the State has the burden to show, by a preponderance of the evidence, that the defendant is legally competent.[2] The United States Supreme Court has "approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational

---

[1] *State v. Shields*, 593 A.2d 986, 1005 (Del. Super. 1990) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).
[2] *Diaz v. State*, 508 A.2d 861, 863 (Del. 1986) (internal citations omitted).

2

understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'"[3] This test is mirrored by Delaware law, which requires that a court determine whether the defendant can: (1) understand the nature of the proceedings; and (2) provide evidence or instructions to counsel on the defendant's own behalf.[4] If the Court finds that the defendant is unable to meet either of those basic requirements, it may order that the defendant be confined to the Delaware Psychiatric Center and receive treatment until ready to stand trial.[5]

Although there is no strict list of elements that a defendant must meet to be deemed competent, this Court previously has used a set of questions referred to as the "McGarry questions" to aid the decision-making process.[6] The McGarry questions ask whether a defendant can:

> (1) Consider realistically the possible legal defenses; (2) Manage one's own behavior to avoid trial disruptions; (3) Relate to attorney; (4) Participate with attorney in planning legal strategy; (5) Understand the roles of various participants in the trial; (6) Understand court procedure; (7) Appreciate the charges; (8) Appreciate the range and nature of possible penalties; (9) Perceive realistically the likely outcome of the trial; (10) Provide attorney with available pertinent facts concerning the offense; (11) Challenge prosecution witnesses; (12) Testify relevantly; and (13) Be motivated toward self-defense.[7]

---

[3] *Drope v. Missouri*, 420 U.S. 162, 172 (1974) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).
[4] 11 *Del. C.* § 404(a).
[5] *Id.*
[6] *Shields*, 593 A.2d at 1000-1001.
[7] *Id.* at 1000 n. 23.

The Court should consider all of the McGarry questions and Defendant's circumstances, "but is not necessarily bound by any one of them, because the determination of competency is 'not susceptible to generalized concepts, or theories, but must be based upon the facts of the particular case.'"[8]

## FINDINGS OF FACT

In addition to their in-person testimony, Dr. Buhler, Dr. Mechanick, Dr. Roberts, and Dr. Reardon have each provided written reports. Based upon their qualifications and experience, each is considered an expert in their field. The opinions and findings provided by each expert are too lengthy to be completely recited in this Order. Therefore, while the reports and testimony have been considered in full by the Court, only the most relevant portions are summarized below.

### Dr. Buhler

Dr. Buhler is employed full time by DPC.[9] She has interacted with Defendant regularly during his time at DPC and is part of his treatment team.[10] During the competency hearing, Dr. Buhler testified that she has witnessed improvements in Defendant's: (1) capacity to appreciate the charges against him; (2) rational understanding of the case; and (3) psychiatric symptoms and

---

[8] *Id.* at 1005 (quoting *U.S. v. Renfroe*, 825 F.2d 763, 767 (3rd Cir.1987)).
[9] Joint Exhibit Vol. I at A61.
[10] *Id.* at A62-64.

4

behavior.[11] Dr. Buhler did not offer an opinion on Defendant's competency, but stated that Defendant has positive relationships with certain peers and staff at DPC and in general has improved since he was first admitted to the center.[12]

### Dr. Mechanick

Dr. Mechanick completed a psychiatric evaluation of Defendant on January 17, 2019.[13] This evaluation took place at the James T. Vaughn Correctional Institute and lasted one hour and forty-five minutes.[14] Dr. Mechanick administered the Competency Assessment for Standing Trial for Defendants with Mental Retardation (CAST*MR) and evaluated Defendant using the McGarry questions.[15] The CAST*MR consists of three parts.[16] The first part consists of 25 multiple-choice questions about basic legal concepts.[17] The second part consists of 15 multiple-choice questions about the defendant's ability to assist the defense.[18] The third part requires the defendant to discuss the events of the case and assesses the defendant's understanding.[19]

---

[11] *Id.* at A64.
[12] *Id.* at A67-70.
[13] *Id.* at A29-37.
[14] *Id.* at A30.
[15] *Id.* at A32-34, A37.
[16] *Id.* at A32.
[17] *Id.*
[18] *Id.*
[19] *Id.*

According to a study included in the CAST*MR manual, the mean score for defendants found to be incompetent is 37/50.[20] When Dr. Mechanick administered the test, Defendant scored 24/25 on Part I and 13/15 on Part II.[21] Defendant declined to participate in Part III.[22] However, based on the answers that Defendant gave Dr. Mechanick throughout the evaluation, Dr. Mechanick gave Defendant a score of 3/10 on the final part.[23] In sum, Defendant scored 40/50.[24]

After completing the examination, Dr. Mechanick concluded that despite Defendant's intellectual disability and mental illness, Defendant was competent to stand trial.[25] He based this conclusion on: (1) Defendant's CAST*MR score, which was above the mean score for incompetent defendants and possibly would have been even higher if Defendant had completed the test in its entirety; and (2) affirmative answers to the McGarry questions.[26]

*Dr. Roberts*

Dr. Roberts has evaluated Defendant twice and written two separate reports. The first evaluation took place over two days, on August 15, 2019 and August 19, 2019.[27] On March 11, 2020, the Court requested that Dr. Roberts provide further

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at A37.
[26] *Id.*
[27] *Id.* at A40-46.

information on the issue of competency.[28] In response to the Court's request, Dr. Roberts completed a second examination on June 12, 2020.[29] Both examinations consisted of a verbal interview with Defendant based on the McGarry questions.[30]

After reviewing existing records and discussing the case with Defendant, Dr. Roberts reported that Defendant: (1) accurately described the charges against him; (2) understood that a felony is a more serious charge than a misdemeanor; (3) stated that if convicted he could receive a sentence of anywhere from zero years to life; (4) believed that the State did not have much evidence against him but guessed that he would "probably get a little more time"; (5) understood the roles of defense counsel, the prosecution, the judge, witnesses, and the jury; (6) stated that he would tell his lawyer or the judge if a witness lied in court; (7) understood that he would need to behave appropriately while in court; (8) demonstrated an improved ability to rationally consider defense strategy, such a plea bargains; (9) appeared capable of working with defense counsel; (10) answered questions in an appropriate manner and declined to answer questions that could reveal incriminating information; (11) was motivated to get the best outcome for himself; and (12) stated that he would not tell his attorney "everything" but otherwise

---

[28] *Id.* at A64.
[29] *Id.* at A74-78.
[30] *Id.* at A43-45, A75-77.

7

appeared willing to work with defense counsel.[31]  Based on these findings, Dr. Roberts opined that Defendant was competent to stand trial.

*Dr. Reardon*

Dr. Reardon met with Defendant for approximately seven hours on February 10, 2020 and February 11, 2020.[32]  She subsequently met with Defendant for one hour and forty-five minutes on December 3, 2020.[33]  Dr. Reardon administered a range of tests and evaluated Defendant's competency-related abilities.[34]

Based upon Defendant's performance and her own observations, Dr. Reardon opined that the effects of Defendant's Schizoaffective Disorder and Mild Intellectual Disability rendered him not competent to stand trial.[35]  Dr. Reardon found that while Defendant understood legal concepts and procedures at a basic level, "his capacity to demonstrate that knowledge, and apply it meaningfully to his current legal situation, was severely limited by his emotional volatility, concrete reasoning, and apparent preoccupation with irrational, inflexible assertions about his case."[36]  In her opinion, Defendant was unable to grasp the severity of the charges against him and realistically assess the possible outcomes of

---

[31] *Id.* at A75-77.
[32] Joint Ex. Vol. II at A213, A380.
[33] *Id.*
[34] *Id.*
[35] *Id.* at A226-27.
[36] *Id.* at A226.

his case.[37] Dr. Reardon additionally expressed concern about Defendant's ability to testify on his own behalf based on his disjointed accounts of the facts of the underlying case which were "colored by paranoid distortions."[38]

Defendant's inability to consider "reality-based feedback or alternative interpretations of the case" led Dr. Reardon to conclude that Defendant would be unable to: (a) provide evidence on his own behalf when meeting with his counsel or when testifying; and (b) effectively comprehend information or the advice of his counsel to make informed decisions about his case.[39] Finally, Dr. Reardon found that Defendant would likely be unable to "track evidence and witness testimony for contradiction or errors" or maintain control over his behavior when faced with testimony that challenged his delusional and/or distorted beliefs.[40]

## CONCLUSION

Questions of competency must be evaluated on a case-by-case basis and require the Court to exercise discretion. Psychological evaluations and expert testimony are immensely helpful to the Court, however, whether a defendant is competent or not is ultimately a legal conclusion.[41] It appears to the Court that

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at A226-27.
[41] *Shields*, 593 A.2d at 1012 (citing *State v. Bertrand*, 465 A.2d 912, 915 (N.H. 1983)).

9

Defendant is straddling the thin line between competency and incompetency. His mental illness and intellectual disability are indisputably having a negative impact on his competency to stand trial, but the experts disagree on how detrimental the impact is.

When applying the McGarry questions, the Court finds that Defendant has a sufficient, if rudimentary, understanding of the participants in a trial and of court procedure. The Court further finds that Defendant is motivated towards self-defense. While Defendant may struggle to maintain complete control over his behavior during the course of his trial, he likely could behave appropriately enough to avoid unnecessary disruptions.

Defendant appears to understand what the charge "murder with a deadly weapon" means but does not appear to appreciate the realities of what he is facing. Dr. Roberts noted that Defendant believes that he could be sentenced to anything between "zero to life" if convicted of his murder charge.[42] Dr. Reardon reported that Defendant told her "'there's a law' prohibiting persons with mental disabilities from being detained for murder" and stated that if he lost at trial, he could subsequently accept a plea for manslaughter.[43] Defendant additionally told Dr.

---

[42] Joint Ex. Vol. I at A75.
[43] Joint Ex. Vol. II at A224.

10

Reardon that he would go home the same day he went to court.[44] Both doctors reported that Defendant believed the State did not have enough evidence to convict him.[45] Based on his responses, the Court finds that Defendant does not appreciate the penalties he is facing and appears unable to realistically consider the likely outcome at trial.

As for Defendant's ability to aid in his defense, he appears to relate well enough to defense counsel. He also seems willing to participate in planning legal strategy, to the extent possible. His ability to realistically evaluate potential legal defenses is questionable but errs on the side of sufficiency. However, the Court harbors major concerns over Defendant's overall ability to participate in his defense.

Defendant has given various conflicting accounts about the events surrounding the alleged murder. He has stated that he is being set-up by his mother, the police, or gang members.[46] He told Dr. Roberts that the State may call certain witness, even though they did not see him "do it,"[47] and told Dr. Reardon that the State did not have any witnesses that could testify against him.[48] Defendant also told Dr. Reardon that the State did not have any physical evidence

---

[44] *Id.* at A225.
[45] *Id.* at A224, A76.
[46] *Id.* at A224.
[47] Joint Ex. Vol. I at A76.
[48] Joint Ex. Vol. II at 225.

against him,[49] despite the fact that he had the victim's blood on him when he was arrested. The Court finds that Defendant does not appear capable of testifying relevantly or providing his attorney with accurate pertinent information about the case. His paranoid beliefs, such as his mother's involvement, also cast doubt on his ability to meaningfully track and challenge the testimony of prosecution witnesses.

Considering all of the McGarry questions cumulatively, the Court finds that Defendant is unable to understand the nature of the proceedings or provide evidence or instructions to defense counsel on his behalf. However, the Court finds it encouraging that Dr. Buhler and Dr. Roberts have both testified that Defendant's abilities have improved over time. This improvement has occurred even though Defendant has declined to participate in the competency restoration program at DPC, chiefly the Legal Eagle and You Be the Judge classes. The Court is hopeful that additional competency restoration treatment at DPC will allow Defendant to further improve to the point that he can be considered competent to stand trial.

**THEREFORE,** after a careful review of the record in this action, the Court hereby finds that Defendant is not competent to stand trial at this time. Defendant

---

[49] *Id.* at A225.

will remain housed at DPC where he is ordered to participate in the Legal Eagle and You Be the Judge classes in addition to any other competency restoration treatment offered by DPC. The Court requests that DPC provide an update on Defendant's progress in six months from the date of this Order.

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston

cc: Prothonotary
Matthew B. Frawley, Deputy Attorney General
John Downs, Deputy Attorney General
Patrick J. Collins, Esquire